Herbert J. Mason
P.O. Box 113
124 B Old Highway 93 S.
Somers, MT 59932-0113
Telephone: (812)483-0857

Plaintiff

MONTANA ELEVENTH JUDICIAL DISTRICT COURT, FLATHEAD COUNTY, MONTANA

HERBERT J. MASON, )
 )  Cause No DV-18-230C
        Plaintiff, )
 )  HEIDI J ULBRICHT
 )
v. )
 )  COMPLAINT AND DEMAND
PROFESSIONAL TRANSPORTATION, INC., )  FOR JURY TRIAL
 )
        Defendant. )

COMES NOW THE PLAINTIFF, and for his Complaint, demands a jury trial and alleges as follows:

## PARTIES

1.  Plaintiff, Herbert J. Mason ("Plaintiff") is a resident of Somers, Flathead County, Montana.

2.  Defendant, Professional Transportation, Inc. ("PTI"), is believed to be a corporation incorporated in Indiana, with its principle place of business in Evansvill, Indiana, operating in the State of Montana.

## ALLEGATIONS RELATIVE TO ALL COUNTS

3.  In or about 2011, Plaintiff was hired by a company called Coach America, Inc. as a driver to transport rail employees from point to point in Montana.

4.  On or about August 23, 2012, Defendant PTI purchased or otherwise acquired the company, and Plaintiff continued employment for PTI.

- 1 -

EXHIBIT

A

5.  Plaintiff was employed by PTI until March 9, 2017, when he was fired.

6.  While employed by PTI, Plaintiff was paid salary of $63,000 per year, plus bonuses, expense account, meals and permitted the use of a company vehicle. Plantiffs 2016 W-2 reflects a total earnings of $74,143.21.

7.  Plaintiff performed his work satisfactorily for PTI and its predecessor and was never subject to any disciplinary action.

8.  As a PTI employee, Plaintiff was promoted to Branch Administrator in less than a month, then to Regional Manager within another month, in or about October 2012 and again promoted to General Manager of the Montana Division in or about September 2013.

9.  Plaintiff rose quickly through the ranks based solely on merit and performance.

10.  Plaintiff weathered several company reorganizations, restructuring and numerous firings of his peers for various pretexts, including several direct supervisors who were fired.

11.  In or about June 2016, PTI initiated another complete reorganization, making severe cuts to field management, as follows: From 3 field ops VP's to 2; from 7 Directors of Operations to 5; from about 26 GM's to 19.

12.  Additionally, in or about June 2016, Plaintiff was required to eliminate all Assistant Branch Manager positions, Fleet Manager Positions and cut several Branch Manager positions, requiring the remaining Branch Managers to now run at least 2 branches each.

13.  In or about June 2016, Plaintiff escalated concerns that PTI was cutting too deep in field management and that their business and revenue projections were not accurate. Plaintiff sent an email to that effect that included his immediate supervisor, Director of Operations Jesse Larca, VP West Operations, William Cullen and Cheif Operating Officer, Ryan Kassenbrock. Plaintiff was

told by PTI that their business model was sound.

14.    In or about June 2016, Plaintiff requested 3 additonal vehicles to haul crews in Whitefish, MT due to projected increase in demand, per his communication with railroad officials.

15.    Plaintiff was told his trip cound did not warrent the additional vehicles. Along with cuts in personnell, PTI also reduced vehicle assets across the division and was slow to issue PO's for any repairs and denied many repairs, impacting on time performance metrics and creating a potential public health hazzard.

16.    Beginning in or about July 2016, trip demand from the railroad began to increase by 50%, gradually at first, then exponentially, with some locations, including Whitefish, experiencing over 300% increase in demand by the fall of 2016, that continued throughout a severe Winter.

17.    By the end of July 2016, two more local Branch Managers quit after being forced to run two branches instead of one, for no additional pay.

18.    Plaintiff was left with just 5 local Branch Managers and his assistant to run 14 far-flung branch locations throughout Montana and North Dakota, with one in South Dakota. This occurred at same time trip demand began increasing steadily, without adequate management in place to respond hire additonal drivers as well as oversee the fleet and daily operations.

19. In or about November of 2016, Plaintiff was pulled off of running the divison as whole and told to focus on Whitefish, Libby, Shelby and Great Falls.

20.    In November of 2016, Plaintiff personally hired and trained 10 drivers in Great Falls and one in Shelby, as the replacement manager hired had quit after just about two weeks and again no local manager in place as a direct result of PTI's cuts. The previous manager in Great Falls, prior to the cuts, had been there for years with solid performance. He declined running a second branch.

-3-

21. In or about November/December 2016 Plaintiff was told to not worry about the rest of the division and to just focus on Whitefish, which was ground zero for the over 300% increases and a no fail location for the railroad due to its remote location in a mountainous area.

22. In or about mid November 2016, Plaintiff was put on a call with his supervisor, Jesse Larca and VP of Operations Support, Ryan Shoener. Mr. Shoener did the talking, though he was not in the Plaintiffs chain of command. Plaintiff was told to start weaning the customer off or dependance on him to slove their problems.

23. Mr. Shoener, with anger in his voice, berated Plaintiff and told him he needed to "play his position" and focus only on staffing, escpecially Whitefish. Shoener, spitting nails, said "...they treat you just like one of them. They treat you like you were a train master, you work for us, not them!" His voice was dripping with disdain.

24. Plaintiffs previous supervisor had stated Platiff had the best customer relations of any GM he had ever seen.

25. Plaintiff was removed from daily conference calls hosted by the railroad in which Plaintiff was invited and had pioneered participation in daily planning on their calls. Plaintiff had exceptional customer relations and unprecedented access to inside information and was treated as a partner at the table rather than just another vendor.

26. On November 1, 2016 Larca sent a "Positive Improvement Plan" email to Plaintiff with 30 day goals. Shortly after, Plaintiff was told to "fix Whitefish" and only work in Whitefish.

27. The end of December 2016 Larca again told plaintiff to "...wean the customer off of dependance" on Plaintiff to "..solve their problems". Larca stated, who knows, you "...might be gone someday. You might want to retire or something."

28. In or about November/December 2016, plaintiff was told to just "fix Whitefish". Yet from mid December on, PTI prevented Plaintiff from hireing a local Branch Manager in Whitefish when the existing manager quit.

29. Plaintiff hired at least 35 drivers in Whitefish almost single handedly, despite repeated requests for help and to allow him to hire a local Branch Manager. Larca repeatedly said "Hold off on that.

30. Plaintiff "fixed" Whitefish as intructed, ending January 2017 at 97% On Time Performance (OTP) and had a total of 55 drivers on staff in Whitefish. This is evidenced by an exchange with VP Cullen on Feb 5,2017 in which Cullen writes: "Thank you for fixing Whitefish."

31. On or about Feb 22, 2017, Cullen was demoted and Shoener took over as VP of West Operations.

32. On March 9, 2017, Plaintiff was fired. Reason given was "Performance Base Termination". PTI prodvided no supporting documentation, other than a list of vauge allegations.

33. Plaintiff recieved a good performance review for 2015 with Merit and an annual salary increase from $60,000 to $63,000 per year.

34. On information and belief, PTI has engaged in a continuing pattern of either unlawfully firing employees or forcing them to quit.

COUNT ONE
WRONGFUL DISCHARGE

35. Plaintiff re-alleges as though fully set forth herin paragraphs 1-34, above.

36. Plaintiff was an employee of PTI in good standing, who was not a probationary employee.

37. Plaintiff was repeatedly promoted and given increased responsibilities at PTI, and performed

his work satisfactorily.

38.    Plantiff's most recent Employee Performance Appraisel was good and resulted in a merit increase in pay.

39.    On March 9, 2017, without any advance warning, notice, or discipline, PTI fired Plaintiff, citing "Performance Based Termination".

40.    Defendant fired plaintiff without good cause, in violation of its own written policy, in retaliation for Plaintiff standing up to his superiors in regards to operational decisions with which Plaintiff did not agree.

41.    Defendants firing of Plaintiff violated the provisions of Montana"s Wrongful Discharge from Employment Act.

42.    Defendant knew or should have known of hte hight risk of injury that would occur to Plaintiff if it fired him with no advance notice, warning, or discipline.

43.    Defendant disregarded the high risk of injury that would occur to Plaintiff if it fired him with no advance notice, warning, or discipline.

44.    Defendant fired plaintiff with actual malice.

45.    As a result of PTI's unlawful termination of Plaintiffs employment, Plaintiff has suffered, and continues to suffer, damages.

WHEREFORE, Plaintiff prays for judgement against the Defendant, as follows:

1.    For judgement against Defendant.

2.    For an award of all damages allowed under Montana law in amounts to be provided at trial.

3.    For an award of punitive damages.

4.    For all interest permitted by Montana law at the legal rate, including but not limited to prejudgement interest.

5.    For all costs and disbursements allowed by law; and

6.    For such other and further relief as the Court deems just and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY

Plaintiff requests a trial by jury of all issues triable by jury in this cause.

Dated this 7th day of March, 2018.


HERBERT J. MASON
Plaintiff


By: _____
      HERBERT J. MASON

FILED
08/17/2019
*Peg L. Allison*
CLERK
Flathead County District Court
STATE OF MONTANA
By: Sarah Arrigoni
DV-15-2018-0000230-WS
Ulbricht, Heidi J
2.00

Andrew D. Huppert, Esq.
andrew@carey-law.com
CAREY LAW FIRM, P.C.
225 W. Broadway • P.O. Box 8659
Missoula, MT 59807-8659
Telephone: (406) 728-0011

*-- Attorneys for Plaintiff Herbert J. Mason*

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT
## FLATHEAD COUNTY

| | |
|---|---|
| HERBERT J. MASON, | Cause No. DV-18-230C |
| Plaintiff, | |
| v. | |
| PROFESSIONAL TRANSPORTATION, INC., | **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendant. | |

COMES NOW, Herbert J. Mason, by and through his counsel of record, Carey Law Firm, P.C., and for his First Amended Complaint against Professional Transportation, Inc., alleges as follows:

### PARTIES

1. Herbert J. Mason ("Mason") is a resident of Somers, Flathead County, Montana.

2. Upon information and belief, Professional Transportation, Inc. ("PTI"), is a corporation incorporated in Indiana, with its principle place of business in Evansville Indiana, operating in the State of Montana.

## ALLEGATIONS RELATIVE TO ALL COUNTS

3.      In or about 2011, Mason was hired by a company called Coach America, Inc., as a driver to transport rail employees from point to point in Montana.

4.      On or about August 23, 2012, PTI purchased or otherwise acquired Coach America and Mason continued employment for PTI.

5.      Mason was employed by PTI until March 9, 2017, when he was fired.

6.      While employed by PTI, Mason was paid salary of $63,000 per year, plus bonuses, expense account, meals, and use of a company vehicle. Mason's 2016 W-2 reflects total earnings of $74,143.21.

7.      As a PTI employee, Mason was promoted to Branch Administrator in less than a month, then to Regional Manager within another month (about October 2012), and again promoted to General Manager of the Montana Division in or about September 2013.

8.      Mason rose quickly through the ranks based on merit and performance.

9.      In June 2016, PTI initiated another reorganization, making severe cuts to field management, include reducing three Field Operation Vice Presidents to two, seven Directors of Operations to five, and about 26 General Managers to 19.

10.     Additionally, in or about June 2016, Mason was required to eliminate all Assistant Branch Manager positions, Fleet Manager Positions and cut several Branch Manager positions, requiring the remaining Branch Managers to now run at least two branches each.

11.     In or about June 2016, Mason expressed concerns that PTI was cutting too deep in field management and that their business and revenue projections were not

accurate. Mason expressed these concerns in an email to: (1) his immediate supervisor, Director of Operations Jesse Larca; (2) VP West Operations William Cullen; and (3) Chief Operating Officer Ryan Kassenbrock. Mason's concerns were summarily rejected and he was told by PTI that their business model was sound.

12. In June 2016, Mason requested three additional vehicles to haul crews in Whitefish, Montana, due to projected increase in demand, per his communication with railroad officials. Mason was told his trip count did not warrant the additional vehicles.

13. Along with cuts in personnel, PTI also reduced vehicle assets across the division and was slow to issue purchase orders for any repairs and denied many repairs, impacting on time performance metrics and creating a potential public health hazard.

14. Beginning in or about July 2016, trip demand from the railroad began to increase by 50%, gradually at first, then exponentially, with some locations, including Whitefish, experiencing over 300% increase in demand by the fall of 2016 that continued throughout a severe winter.

15. By the end of July 2016, two more local Branch Managers quit after being forced to run two branches instead of one, for no additional pay.

16. Mason was left with just five local Branch Managers and his assistant to run 14 branch locations throughout Montana and North Dakota, and one in South Dakota. This occurred at the same time trip demand began increasing steadily, without adequate management in place to respond, hire additional drivers, or oversee the fleet and daily operations.

17.    In the Spring or Fall of 2016, Mason warned his supervisors that company vans needed new winter tires in order to avoid operating the vans in dangerous winter conditions, thereby jeopardizing the safety of drivers and crew.  Mason's warnings were largely ignored.

18.    On October 13, 2016, Mason was informed that tires for the vans were on back order until November 2016.

19.    Mason emailed William Cullen on October 14, 2016, at 6:21 a.m., and expressed his frustration and concern about the back ordered winter tires:

> Exactly as a predicted.  First set of winter tires approved for Whitefish are backordered until November.  These should have been pre-ordered in May.
>
> Two loss control accidents already with the first significant snow fall, one with driver claiming injury, two vans out of service.  What are the savings here?  We are playing Russian Roulette here.
>
> With 30 plus CD's across the top, the only safe decision with the next snow fall will be to shut the highline down completely.

20.    PTI's VP of Fleet Management, Danny Barr, was incensed by Mason's email as documented in his email that day to PTI management:

> I'm a little pissed because we have a potential issue brewing that needs to be nipped the bud.  Need to call Herb and tell him to shut his mouth about tires in Whitefish – PERIOD.  He needs to understand ANYTHING he says will be twisted and will royally screw up the meeting with Bill, Bobby and I are having in Ft. Worth next Friday.  Chad just came to me and said he had received calls from both Jami and Herb concerning studs being some type of "possible exception" in Whitefish.  Herb even went so far as to tell Chad there have been two slide-offs in Whitefish due to all-season tires.  I have news for Herb – we had slide-offs last year on studs.  Why he felt a need to share this with Chad is beyond me because it implies he is not on the

same page we are corporately. This kind of soap opera loose
banter Herb loves to participate in is exactly what gets our tail
in a sling. . . .

21.    Shortly thereafter, PTI changed the conditions of Mason's employment and

began making his work efforts unreasonably difficult.

22.    In November of 2016, Mason was stripped of his responsibility to manage

14 branch locations throughout Montana and North Dakota, and was told to focus on

Whitefish, Libby, Shelby and Great Falls.

23.    In mid-November 2016, Mason was instructed by supervisor, Jesse Larca,

and Ryan Shoener to stop communicating with PTI's customer, BNSF. Shoener berated

Mason and told him he needed to "play his position" and focus only on staffing Whitefish

and stop his customer relations efforts with BNSF.

24.    Mason was then removed from daily conference calls with BNSF, even

though Mason pioneered participation in daily planning with BNSF. Mason had

exceptional customer relations and unprecedented access to shared information and was

treated by BNSF as a partner at the table rather than just another vendor.

25.    Mason warned Larca on several occasion that performance at the Minot hub

was slipping and PTI needed to get in front of it. Mason informed Larca that the root cause

of Minot's problems was no local manager to manage the process, get vans to and from the

shop, and maintain staffing. Mason asked that Jami Christofferson be allowed to manage

the Minot branch to keep it from slipping further and to screen manager candidates. Larca

overruled Mason and pulled Christofferson to Havre, leaving Minot without effective

management from September 2016 through December 2016. Minot's performance slipped dramatically during that four-month period.

26.　　Mason emailed Larca on November 3, 2016, about Minot's failure to meet customer demands and stated:

> This has become an almost daily occurrence in Minot. Let's not wait until the OTP [on time performance] drops below 90% to address it. Per our previous conversations, we need to send a replacement CD in to Whitefish and release Don Montgomery back to his home branch in Minot as soon as possible please.

27.　　Larca responded to Mason's email and was dismissive of Mason's concerns. Mason responded to Larca, stating:

> Jesse, we are trying to help you. Why does it take things getting to crisis stage and hitting Ron Romaine's desk before anything gets done? Every red flag I threw up starting back in June that we would be right where we are today across the entire division, including and especially Whitefish was poo pooed and ignored. Wouldn't you rather fix it now before it blows up? We just had 2 more people clear in Whitefish and they will be on the board tomorrow with emailed badges. We have a solid pipeline in Whitefish. They will be OK without Don.

28.　　A few days later, Larca issued Mason a "Positive Improvement Plan," criticizing his performance and imposing 30-day goals. Larca was also critical of the "tone and content" of Mason's messages to leadership.

29.　　Near the end of December 2016, Larca told Mason "you might be gone someday. You might want to retire or something."

30.　　PTI continued to assert unreasonable demands and pressure on Mason in November/December 2016, as part of Mason's duty to "fix Whitefish." At the same time,

PTI refused Mason's request to hire a new Whitefish Branch Manager when the existing manager quit.

31. Mason made heroic efforts to meet PTI's demands and almost single handedly hired at least 35 drivers in Whitefish. This was in spite of the fact Mason repeatedly requested authority to hire a local Branch Manager, to which Larca replied "Hold off on that."

32. Mason "fixed" Whitefish as instructed, ending January 2017, with 97% On Time Performance (OTP), and a total of 55 drivers on staff in Whitefish. This is evidenced by an exchange with VP Cullen on February 5, 2017, in which Cullen wrote "Thank you for fixing Whitefish."

33. On March 9, 2017, Mason was fired without warning or process. The reason given was "Performance Base Termination." PTI's "reason" was baseless and PTI provided no supporting documentation, other than a list of vague allegations.

34. PTIs' Personnel policies, as revised on February 22, 2017, set forth the procedures PTI must follow before and after terminating an employee on an involuntary basis. These policies applied to "all United Companies employees," including Mason.

35. PTI failed to follow the express provisions of its own written personnel policy in terminating Mason's employment.

## WRONGFUL DISCHARGE FROM EMPLOYMENT

36. Mason re-alleges as though fully set forth herein paragraphs 1 through 35.

37. Mason was an excellent employee in good standing and was not a probationary employee.

38.    Mason was repeatedly promoted and given increased responsibilities at PTI and performed his work satisfactorily.

39.    On March 9, 2017, without any advance warning, notice, or discipline, PTI fired Mason, citing "Performance Based Termination".

40.    PTI fired Mason without good cause, in violation of its own written personnel policy, and in retaliation for Mason standing up to his superiors in regards to safety and operational decisions with which Mason did not agree.

41.    PTI's firing of Mason violated the provisions of Montana's Wrongful Discharge from Employment Act.

42.    PTI's firing of Mason was, in part, in retaliation for Mason reporting a violation of public policy (danger caused by poor van tires). PTI acted with actual malice in retaliating against Mason for reporting this violation.

43.    As a result of PTI's unlawful termination of Mason's employment, Mason has suffered, and continues to suffer, damages.

WHEREFORE, Mason prays for judgement against the PTI, as follows:

1.    For judgement against PTI.

2.    For an award of all damages allowed under Montana law in amounts to be provided at trial.

3.    For an award of punitive damages.

4.    For all interest permitted by Montana law at the legal rate, including but not limited to prejudgement interest.

///

DATED this 17th day of June, 2019.

> CAREY LAW FIRM, P.C.
> 225 W. Broadway • P.O. Box 8659
> Missoula, MT 59807-8659
> Telephone: (406) 728-0011
> -- *Attorneys for Plaintiff Herbert J. Mason*
>
> By  /s/ Andrew D. Huppert
>         Andrew D. Huppert

## DEMAND FOR JURY TRIAL

Plaintiff, Herbert J. Mason, hereby requests a trial by jury of all issues so triable.

DATED this 17th day of June, 2019.

> CAREY LAW FIRM, P.C.
> 225 W. Broadway • P.O. Box 8659
> Missoula, MT 59807-8659
> Telephone: (406) 728-0011
> -- *Attorneys for Plaintiff Herbert J. Mason*
>
> By  /s/ Andrew D. Huppert

# CERTIFICATE OF SERVICE

I, Andrew D. Huppert, hereby certify that I have served true and accurate copies of the foregoing Complaint - Amended Complaint to the following on 06-17-2019:

Andrew D. Huppert (Attorney)
225 West Broadway
P.O. Box 8659
Missoula MT 59807-8659
Service Method: eService
E-mail Address: andrew@carey-law.com

Electronically signed by Laura R. Talbott on behalf of Andrew D. Huppert
Dated: 06-17-2019

Andrew D. Huppert, Esq.
andrew@carey-law.com
CAREY LAW FIRM, P.C.
225 W. Broadway • P.O. Box 8659
Missoula, MT 59807-8659
Telephone: (406) 728-0011

*— Attorneys for Plaintiff Herbert J. Mason*

RECEIVED

SEP 1 9 2019

Hedger Friend, PLLC

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT
## FLATHEAD COUNTY

| | |
|---|---|
| HERBERT J. MASON, | Cause No. DV-18-230C |
| Plaintiff, | |
| v. | |
| ·PROFESSIONAL TRANSPORTATION, INC., | SUMMONS |
| Defendant. | |

THE STATE OF MONTANA SENDS GREETINGS TO THE ABOVE-NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action, which is filed in the office of the Clerk of this Court, a copy of which is herewith served upon you, and to file your Answer and serve a copy thereof upon the Plaintiff's attorney within twenty-one (21) days after the service of this Summons, exclusive of the day of service; and in case of your failure to appear or answer, judgment will be taken against you by default, for the relief demanded in the Complaint.

WITNESS my hand and the seal of said Court, the ___11___ day of September, 2019.

(Court Seal)

PEG L. ALLISON, Clerk
Flathead County District Court

By _____
Deputy Clerk



3

Andrew D. Huppert, Esq.
andrew@carey-law.com
CAREY LAW FIRM, P.C.
225 W. Broadway • P.O. Box 8659
Missoula, MT 59807-8659
Telephone: (406) 728-0011

*-- Attorneys for Plaintiff Herbert J. Mason*

## MONTANA ELEVENTH JUDICIAL DISTRICT COURT
## FLATHEAD COUNTY

| | |
|---|---|
| HERBERT J. MASON, | Cause No. DV-18-230C |
| Plaintiff, | |
| v. | NOTICE AND ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL |
| PROFESSIONAL TRANSPORTATION, INC., | |
| Defendant. | |

The enclosed Summons and Complaint are served pursuant to Rule 4, Mont. R.

Civ. P.

You may complete the acknowledgment part of this form and return one copy of

the completed form to the sender within twenty-one (21) days after the date it was mailed

to you as shown below.

If you decide to complete and return this form, you must sign and date the

acknowledgment. If you are served on behalf of a corporation, unincorporated

association (including a partnership), or other entity, you must indicate under your

signature your relationship to that entity. If you are served on behalf of another person

and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return this form to the sender within twenty-one (21) days after the date it was mailed to you as shown below, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within twenty-one (21) days after the date of signature which you place on the acknowledgment below. If you fail to answer the complaint within the foregoing twenty-one (21) day period, judgment by default will be taken against you for the relief demanded in the complaint.

I declare, under penalty of perjury, that this Notice and Acknowledgment of Receipt of Summons and Complaint will have been mailed on September 16, 2019.

DATED this 16th day of September, 2019.

CAREY LAW FIRM, P.C.
225 W. Broadway • P.O. Box 8659
Missoula, MT 59807-8659
Telephone: (406) 728-0011
ATTORNEYS FOR PLAINTIFF

By: _____
Andrew D. Huppert

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT
## AND WAIVER OF SERVICE

I have received your request to acknowledge and waive service of a Summons in this action along with a copy of the Summons and Complaint. I, or the entity I represent, agree to save the expense of serving a Summons and Complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the Court's jurisdiction, and the venue of this action, but that I waive any objections to the absence of a Summons or of personal service.

I also understand that I, or the entity I represent, must file and serve an Answer or a Motion under Rule 12, Mont. R. Civ. P., within 21 days from the date I sign this Acknowledgment. If I fail to do so, a Default Judgment will be entered against me or the entity I represent.

I declare, under penalty of perjury, that I received a copy of the summons and complaint in the above-captioned matter at _____.

_____
Signature

_____
Printed Name

_____
Relationship to Entity/Authority to Receive
Service of Process

_____
Date of Signature